# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| GAYLE BURKE GAUDET | CIVIL ACTION |
|---|---|
| VERSUS | NO: 09-7577 |
| J&M INDUSTRIES, INC. | SECTION: "F" (4) |

## ORDER

Before the Court is a **Motion for Protective Order (R. Doc. 12)**, filed by the Defendant, J&M Industries, Inc. ("J&M"), seeking the entry of a Protective Order quashing portions of the second set of Requests for Production propounded by the Plaintiff, Gayle Burke Gaudet ("the Plaintiff"). Plaintiff filed a response opposing the motion. (R. Doc. 13.) The matter was heard with oral arguments on Wednesday, August 18, 2010.

## I. Background

J&M is a privately owned company that was founded by Maurice Gaudet, III ("Maurice"), in the early 1970s. (R. Doc. 1, p. 2.) Donald Gaudet, Sr. ("Donald"), Maurice's brother, became a shareholder in the mid-1970s and managed the daily operations of J&M. (R. Doc. 1, p. 2.) Maurice is currently J&M's chief executive officer and majority shareholder. (R. Doc. 1, p. 3.) Donald applied for the patent at issue on June 1, 2005, and when Donald died on May 22, 2007, his widow, the Plaintiff, inherited his patent application. (R. Doc. 1, p. 3.) The Plaintiff finally received her U.S. Patent Number 7,461, 479 on December 9, 2008, and she claims that as the owner of the patent, she has the right to sue for its infringement. (R. Doc. 1, p. 3.)

The Plaintiff claims that Donald invented the plant protection system that is the subject of the

patent independently of his employment with J&M. (R. Doc. 1, p. 3.) The Plaintiff claims that J&M has been infringing on the patent by making, selling, and using products that use Donald's patented methods. (R. Doc. 1, p. 3.) J&M claims that it has rights to the patent under an agreement with Donald to license the patent to J&M for a royalty of $1.00 per year. (R. Doc. 1, p. 4.) However, the Plaintiff denies that any such agreement was ever made. (R. Doc. 1, p. 4.) As relief, the Plaintiff is seeking an injunction to stop J&M from using her patented invention and damages for J&M's infringement of her patent. (R. Doc. 1, p. 1.)

As to the instant motion, J&M is seeking a Protective Order quashing certain requests in the Plaintiff's second set of Requests for Production. (R. Doc. 12, p. 1.) Specifically, J&M seeks to quash Requests for Production 4, 5, 6, and 7, which it claims are not relevant to the present litigation. (R. Doc. 12, p. 1.) The Plaintiff opposes the motion. (R. Doc. 13.)

## II. Standard of Review

### A. Scope of Discovery

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(c). In assessing whether the burden of the discovery and outweighs the benefit, a court must account for: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id*.

### B.    **Protective Order**

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Rule 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed.R.Civ.P. 26(c).

Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

### III.   **Analysis**

The Defendants seek a Protective Order quashing certain requests in the Plaintiff's second set

of Requests for Production that seek information regarding life insurance policies held by or purchased for J&M's shareholders. (R. Doc. 12-1, p. 2.) J&M argues that the documents responsive to Requests for Production 4,[1] 5,[2] 6,[3] and 7[4] are not relevant to the Plaintiff's claim regarding patent infringement and therefore should be quashed. (R. Doc. 12-1, p. 4.) J&M argues that the documents sought in these Requests for Production are not reasonably calculated to lead to the discovery of admissible evidence because they have no bearing on the subject of this suit; namely, the plant protection system or the patent. (R. Doc. 12-1, p. 4.)

In response, the Plaintiff argues that she plans to show at trial, that Donald would not have agreed to grant J&M a license to use the patent for $1.00 per year because he had ill feelings towards his brother. (R. Doc. 13, p. 2.) The Plaintiff alleges that beginning in 1988 the shareholders of J&M entered into a series of agreements providing that if any of them died, their estates would have the option to sell their shares back to J&M at two times the book value. (R. Doc. 13, p. 3 (citing Stockholders' Agreement, R. Doc. 13-2, p. 1.)) The Plaintiff claims that J&M funded its obligation to purchase the decedents' shares by taking out insurance policies on the lives of the shareholders. (R. Doc. 13, p. 3.)

The Plaintiff claims that unbeknownst to the other shareholders, Maurice and Rene Gaudet had a side agreement to buy one another's shares in the event that one of them died, which would give the

---

[1] Request for Production 4 seeks any shareholder agreements between Maurice and Rene Gaudet. (R. Doc. 12-2, p. 12.)

[2] Request for Production 5 seeks all documents evidencing the amount of coverage or premiums paid for any life insurance policy purchased by J&M for any of its shareholders. (R. Doc. 12-2, p. 12.)

[3] Request for Production 6 seeks all documents referring to coverage amounts or premiums paid for life insurance polices for Maurice or Rene Gaudet that are not produced in response to Request for Production 5. (R. Doc. 12-2, p. 12.)

[4] Request for Production 7 seeks the minutes of any board meetings or shareholder meetings in which the purchase of Donald's shares after his death were addressed. (R. Doc. 12-2, p. 12.)

4

survivor a clear majority of J&M shares. (R. Doc. 13, p. 3.) When Rene Gaudet died on December 31, 1999, Maurice bought out his shares and assumed control of the company. (R. Doc. 13, p. 3; *see also* Notes to Financial Statements, R. Doc. 13-1, p. 26.) The Plaintiff further contends that after gaining a majority interest in the company, Maurice had the shareholders execute a new agreement reducing the purchase price of deceased shareholders' shares from two times the book value to the book value. (R. Doc. 13, pp. 3-4.) The Plaintiff claims that the knowledge that he would only receive half of his previous entitlement would be further disincentive for Donald to give up his patent rights for only $1.00 per year. (R. Doc. 13, p. 4.)

The Plaintiff argues that the documents she seeks are relevant to showing that her deceased husband would not have granted Maurice or J&M a license, for his patent at the board meeting on February 22, 2005, because of personal animosity. (R. Doc. 13, p. 4.) The Plaintiff claims that courts have recognized that personal animosity can be relevant to a case if that animosity would affect a party's behavior. (R. Doc. 13, pp. 4-5.) The Plaintiff claims that because the documents sought are relevant to Donald's state of mind, they are discoverable and should be produced. (R. Doc. 13, p. 6.)

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *United States v. Proctor & Gamble* Co., 356 U.S. 677, 682 (1958). Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion involving judicial intervention. "The rules require that discovery be accomplished voluntarily; that is, the parties should affirmatively disclose relevant information without the necessity of court orders compelling disclosure." *Bush Ranch v. E.I. DuPont Nemours and Co.*, 918 F.Supp. 1524, 1542 (M.D. Ga. 1995), *rev'd on other grounds*, 99 F.3d 363 (11th Cir. 1996); *Cruz v. United States*, No. 3:09-cv-155-J-

25TEM, 2010 WL 2612509 (M.D. Fla., June 25, 2010).

"Rule 26 embraces all 'relevant information' a concept which is defined in the following terms: 'Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *Victor v. Lawler*, No. 3:08-CV-01374, 2010 WL 2595945, at *2 (M.D. Pa. June 24, 2010); *see also United States v. Shaw*, No. 04-2503 RDR, 2005 WL 3418497, at *1 (D. Kan. 2005) (stating that relevancy is broadly construed so "as a general proposition, a request for discovery should be considered relevant if there is 'any possibility' that the information ought may be relevant to the claim or defense of any party") (quoting *Sheldon v. Vermonty*, 203 F.R.D. 679, 689-90 (D. Kan. 2001))).

### A. Separate Shareholder Agreements Between Maurice and Rene Gaudet

At the hearing, counsel for J&M claimed that it should not be required to respond to Request for Production 4, which seeks any separate shareholder agreements between Maurice and Rene Gaudet, because the information is not relevant to the patent infringement action. Counsel for the Plaintiff responded, arguing that the agreement is relevant to Donald's state of mind when J&M claims that he granted it a license to use the patent at the February 22, 2005, board meeting. Counsel for the Plaintiff argued that Donald was annoyed when he discovered, when Rene died on December 31, 1999, that Maurice and Rene had a side agreement to sell each other their shares upon death. Counsel for the Plaintiff further argued that Donald was also angered by the fact that after assuming control of the company through his side agreement with Rene, Maurice pressed the board to only pay 1x the value of the shares upon a shareholder's death instead of the previously agreed 2x the value of the shares.

Although this is a patent infringement claim, J&M's asserted a counterclaim against the Plaintiff alleging that at a February 22, 2005, board meeting, Donald granted it a license for ten years

or the life of the patent, whichever was longer, for $1.00 per year. (R. Doc. 7, ¶ 25.) The Court finds that evidence of separate shareholder agreement between Maurice and Rene Gaudet could be relevant to J&M's counterclaim because it would provide support for the Plaintiff's claim that Donald harbored ill will against Maurice and J&M and would not have granted it a license for his invention. Therefore, J&M's motion for a protective order is denied as to Request for Production 4, which seeks the separate shareholder agreement of Maurice and Rene Gaudet, because the Court finds that J&M has not established good cause to deny discovery of this information. J&M is ordered to respond to this Request for Production and produce any agreements responsive to the request.

### B. Life Insurance Policies Purchased by J&M for Shareholders

At the hearing, counsel for J&M claimed that it should not be required to respond to Request for Production 5, which seeks life insurance policies purchased for J&M shareholders, because the information is not relevant to the patent infringement action or Donald's state of mind. Counsel for the Plaintiff responded, stating that Donald was upset about J&M going from 2x book value for shareholder buyouts to 1x book value because of the negative impact it might have on his family's financial security.

It is not clear how the premiums or amount of coverage paid by J&M for its shareholders relates to any claim or defense in this matter. Although the Plaintiff argues that Maurice forced the shareholders to accept half the money they were previously entitled to from J&M for their shares upon their death, it is not clear how the amount of coverage or premiums paid would be relevant to Donald's state of mind regarding licensing his patent to J&M. Therefore the Court finds that J&M has shown good cause for a protective order and its motion is granted as to Request for Production 5, which seeks documents showing the amount of coverage and the premiums paid by J&M for life insurance policies on its shareholders.

### C. Other Life Insurance Policies for Maurice and Rene Gaudet

At the hearing, counsel for J&M claimed that it should not be required to respond to Request for Production 6, which seeks documents showing the coverage amounts and premiums paid on life insurance policies for Maurice and Rene Gaudet, because the information is not relevant to the patent infringement action. Counsel for the Plaintiff claimed, in response, that this information is relevant to whether Maurice's statement that J&M could no longer afford to pay 2x the value for shares of deceased shareholders was pretextual or not.

Documents responsive to Request for Production 6, showing the coverage amounts and premiums paid on life insurance policies for Maurice and Rene Gaudet not produced in response to Request for Production 5, are not discoverable. The Plaintiff has not adequately explained why Maurice and Rene Gaudet's life insurance policies, particularly those not paid for by J&M, are at all relevant to this action. The Court is not persuaded by the Plaintiff's contention that even the information is relevant to whether Maurice's claim that J&M could not afford to pay 2x the value for shares, that it should be produced in connection with this patent infringement action. Therefore the Court finds that J&M has shown good cause for a protective order and its motion is granted as to as to Request for Production 6.

### D. Minute Entries Discussing Purchase of Donald's Shares

At the hearing, counsel for J&M claimed that it should not be required to respond to Request for Production 7, which seeks minutes of all meetings in which the purchase of Donald's shares were discussed following his death, because the information is not relevant to the patent infringement action. Counsel for the Plaintiff argued that information is relevant to Maurice Gaudet's course of conduct.

The Court finds that the minutes of meetings in which the purchase of Donald's shares were discussed following his death are not relevant to the claims of either party. Even accepting the

Plaintiff's argument regarding Donald's animosity toward J&M, it is not apparent why events that occurred after Donald's death would have any bearing on his ill will towards J&M or Maurice. Therefore the Court finds that J&M has shown good cause for a protective order and its motion is granted as to Request for Production 7.

**IV.    Conclusion**

Accordingly,

**IT IS ORDERED** that **Motion for Protective Order (R. Doc. 12)** is hereby **GRANTED IN PART** and **DENIED IN PART.**

- **IT IS GRANTED** as to Requests for Production 5, 6, and 7.
- **IT IS DENIED** as to Request for Production 4.

**IT IS FURTHER ORDERED** that J&M produce documents responsive to Request for Production 4 no later than **eleven (11) days** from the signing of this Order.

New Orleans, Louisiana, this 31st day of August 2010

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**